UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

JEAN EMMANUEL RODRIGUEZ,                    Civil Action No. 18-11166

        Plaintiff,

                                **OPINION**

    v.

THE STATE OF NEW JERSEY, et
al.

        Defendants.

_____

**APPEARANCES:**

JEAN EMMANUEL RODRIGUEZ
100 NEW ROAD
APT. F3
SOMERS POINT, NJ 08244

        *Plaintiff appearing pro se*

JESSICA ANN SAMPOLI
OFFICE OF THE ATTORNEY GENERAL OF NJ
25 MARKET ST, 7TH FL, WEST WING
PO BOX 116
TRENTON, NJ 08625

        *Counsel for Defendant the State of New Jersey*

THOMAS B. REYNOLDS
REYNOLDS & HORN, P.C.
A PROFESSIONAL CORPORATION
116 S. RALEEIGH AVENUE
APARTMENT 9B
ATLANTIC CITY, NJ 08401

        *Counsel for Defendants Hamilton Township*
        *Police and Gerhard Thoresen*

**HILLMAN, District Judge**

    This matter is before the Court on (1) Defendant the State

of New Jersey's ("State Defendant") Motion to Dismiss, (ECF No.
34), which Plaintiff has not filed an opposition to; (2)
Plaintiff's Motion for Summary Judgment, (ECF No. 35), which no
Defendant has responded to; and (3) Defendants Hamilton Township
("Defendant Hamilton")[1] and Defendant Gerhard Thoresen's
("Defendant Thoresen") Motion for Summary Judgment, (ECF No. 34,
which Plaintiff has filed an Opposition to (ECF No. 36).   For
the following reasons, the State Defendant's Motion to Dismiss
will be granted, Plaintiff's Motion for Summary Judgment will be
denied, and Defendants Hamilton and Thoresen's Motion for
Summary Judgment will be granted.

## BACKGROUND

This case concerns the alleged use of excessive force on,
subsequent false arrest and malicious prosecution of Plaintiff,
Jean Emmanuel Rodriguez ("Plaintiff"), while he was at a bus
stop at the Hamilton Mall on June 18, 2018.   This Court has
before it video evidence capturing all of Defendant Thoresen's
encounter with Plaintiff.[2]

---

[1] The proper defendant in this case is Hamilton Township not the
Hamilton Township police department.   This is because "a police
department is not a person under § 1983 independent of the
municipality itself."   Payano v. City of Camden, No. 13-2528,
2016 WL 386040, at *8 (D.N.J. Feb. 1, 2016).

[2] The facts as depicted in the videotape are included because the
video is part of the record and, therefore, the Court must rely
on the video in ruling on summary judgment.   See Scott v.
Harris, 550 U.S. 372, 381 (2007) (finding that the Court of

On June 18, 2018, Defendant Thoresen received a call that there was a disorderly subject on a New Jersey Transit bus and that the bus was currently stopped at a bus stop next to the

---

Appeals "should have viewed the facts in the light depicted by the videotape"); Ference v. Township of Hamilton, 538 F. Supp. 2d 785, 789 (D.N.J. 2008) ("The videotape is also likely the best available evidence of the events at issue in this case. Thus, the videotape will be considered as part of the record.").

When the Supreme Court held that videotaped evidence may "utterly discredit[]" contrary averments on summary judgment, it noted that "[t]here [were] no allegations or indications that [the] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," Scott, 550 U.S. at 378, by the non-moving party. Although Plaintiff states that the police footage is "altered" and points to the fact the audio is slightly delayed, his argument is conclusory. (ECF No. 36 at 5-7.) Plaintiff does not directly address any of the factors that mattered to the Scott Court. Plaintiff does not for instance, indicate how the video recording has been "doctored or altered in any way" nor how "what is depicts differs from what actually happened." The video captures the use of force in its entirety and there are no sudden jumps, breaks, or other indications that the video is altered. Because Plaintiff has offered no basis on which this Court might find that the video recording has been doctored or altered or that what it depicts differs from what actually happened, this Court will rely on the video recording in the same manner, to the same extent, and for the same reasons as the Supreme Court did in Scott. This finding is further bolstered by Plaintiff's argument that the Hamilton mall video footage ("Cam123_BusTerminal"), which has no audio, instead shows the accurate depiction of the altercation from a different angle than the police footage. This Court is unsure of how this additional video footage supports Plaintiff's argument regarding video tampering and instead agrees with Defendants that the video simply provides "corroborating evidence of Plaintiff Rodriguez's admitted throwing and swinging motion, intended to strike and injure bus driver Gray, and in the course of this action Rodriguez physically struck Officer Thoresen, who promptly and appropriately effected Plaintiff's arrest." (ECF No. 38 at 2.)

3

Hamilton Mall.  One minute and fifty-six seconds into Defendant
Thoresen's Mobile Vehicle Recorder ("MVR"), Defendant Thoresen
arrives at the scene where he observes the Plaintiff and
Defendant Richard Gray ("Defendant Gray") both outside of the
bus at the bus stop.  Around 2:18, Defendant Thoresen asks the
parties how they are doing.  It is difficult to make out what
Defendant Gray says as his voice is low, but at one point he
explains to Defendant Thoresen that Plaintiff has to go because
he is being disorderly.  Around 2:27 into the MVR, Plaintiff
explains that he paid to go to Atlantic City and complains about
Defendant Gray dropping him off in Hamilton and refusing to give
him his money back.  Plaintiff reiterates "I just want my money
back."  Around 2:34 into the MVR, Defendant Thoresen then asks
Plaintiff how far he went so far to which Plaintiff explains
again that he already paid.

     At this point, it is difficult to hear what Defendant Gray
is saying because Plaintiff is now raising his voice and
constantly repeating that he paid already and that he paid to
get to Atlantic City.  Around 2:55, Defendant Thoresen explains
Plaintiff will have to get another bus to get back to Atlantic
City and again Plaintiff responds he wants his money back.
Around 3:03, Defendant Thoresen explains to Plaintiff that
determining whether Plaintiff will get his money back is not up
to Defendant Thoresen.  At this point, Plaintiff raises his

4

voice even louder and states, "how the fuck can I get my money back." Defendant Thoresen then asks Plaintiff to relax and explains they are going to work this out. Plaintiff again then responds "how the fuck can I not get my money back I need to go somewhere." Around 3:13, Defendant Thoresen explains he understands that Plaintiff is upset and instructs him to just listen to him and that they will work it out for him.

Around 3:20, Defendant Thoresen tells Plaintiff to relax and steps in the middle of both Defendant Gray and Plaintiff to deescalate the situation and assures him they will get Plaintiff to Atlantic City. Despite this, at 3:21-3:33, Plaintiff then throws his arm over the Defendant Thoresen's shoulder at Defendant Gray while simultaneously striking Defendant Thoresen's arm. Plaintiff explains that at this time he was throwing two dimes at Defendant Gray after he told him "that's why you ain't getting shit." (ECF No. 37 at 3.)

Following this, Defendant Thoresen immediately attempts to subdue Plaintiff by pinning him to the ground. Defendant Thoresen pins him with his body weight on top and rolls towards Plaintiff's side to be in between Plaintiff and Defendant Gray. During this same time, Defendant Gray comes around the side and kicks Plaintiff in the head twice. Defendant Thoresen explains to Plaintiff that he hit him to which Plaintiff responds he did not hit him. In response, Defendant Thoresen again explains

that Plaintiff did hit him in the arm.

Plaintiff then explains he is not resisting and Defendant Thoresen explains "I know, I know. Relax."  After asking Plaintiff to relax again he helps Plaintiff off from the ground and explains he will put Plaintiff in handcuffs.  In the MVR, Plaintiff is brought to the ground at 3:23 and Defendant Thoresen helps him up from the ground at 4:02.  Accordingly, the physical portion of the incident lasted approximately 40 seconds.

Following the altercation, Defendant Thoresen charged Plaintiff with aggravated assault for striking Defendant Thoresen while engaging in an altercation with Defendant Gray and disorderly conduct for engaging in a dispute in front of a police officer while being ordered to back off.  Both Defendant Thoresen and Plaintiff suffered some injuries following the altercation.  Specifically, Defendant Thoresen injured the back of his hands and left elbow and Plaintiff had a small abrasion over his left eye.  He initially denied Defendant Thoresen's question of whether he needed an ambulance, but he then later said he wanted an ambulance response.  Once the Hamilton Township Rescue Squad arrived Plaintiff initially denied hospital transport, but then finally decided he wanted to go to the hospital.

Plaintiff filed a Complaint with this Court against

Defendants, seeking the charge levied by the State of New Jersey be dismissed and a monetary penalty of $250,000 to be split between Defendants.  (ECF No. 1.)  Plaintiff's Complaint alleges violations of 42 U.S.C. § 1983 for false arrest, excessive force, and malicious prosecution.  Plaintiff explains his basis for jurisdiction is also the "right not to be discriminated by a business based on creed."  (ECF No. 1.)

Defendants Thoresen and Hamilton jointly filed a Motion for Summary Judgment on all Counts in the Complaint.  That motion has been fully briefed.  Defendants Thoresen and Hamilton submit they are entitled to judgment as a matter of law on liability because they are shielded by qualified immunity and Officer Thoresen acted with probable cause.  Moreover, State Defendant filed a Motion to Dismiss to dismiss Plaintiff's claims against it pursuant to the sovereign immunity doctrine, among other arguments.  Finally, Plaintiff has filed a Motion for Summary Judgment.[3]

---

[3] Beyond Plaintiff's conclusory allegations and speculations, he offers almost no evidence or legal argument to support his motion that summary judgment should be granted in his favor. Moreover, as previously discussed, Plaintiff's allegations that the MVR is altered is entirely conclusory.  Thus, this Court denies Plaintiff's additional request for the Defendants to turn over the full video pursuant to Federal Rule of Civil Procedure 26.  (ECF No. 35.)  In addition, this Court denies Plaintiff's request for the Defendants to turn over the Hamilton Mall video as it has come to the Court's attention that the Plaintiff is in possession of such video ("Cam123_BusTerminal").

## DISCUSSION

**A. Subject Matter Jurisdiction**

The Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

**B. Legal Standards**

**a. Standard for Dismissal under Rule 12(b)(1)**

Because "[t]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," State Defendant's motion is, in part, a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996).

Typically, once a Rule 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006). "However, because 'Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense,' and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability." Garcia v. Knapp, No. 19-17946, 2020 WL 2786930, at *3 (D.N.J. May 29, 2020) (quoting Christy v. PA Tpk. Comm., 54 F.3d 1140, 1144 (3d Cir. 1994)).

In deciding a Rule 12(b)(1) motion, "a court must first

determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed." <u>Leadbeater v. JPMorgan Chase, N.A.</u>, No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." <u>Id.</u>; <u>see also</u> <u>Garcia</u>, 2020 WL 2786930, at *4 ("Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge."). In reviewing a facial attack, the Court should consider only the allegations in the complaint, along with documents referenced therein and attached thereto, in the light most favorable to the nonmoving party. <u>See</u> <u>Constitution Party of Pennsylvania v. Aichele</u>, 757 F.3d 347, 358 (3d Cir. 2014).

Thus, a facial motion is handled much like a 12(b)(6) motion, and allegations in the complaint are accepted as true. <u>Leadbeater</u>, 2017 WL 4790384, at *3.

     **b. Motion for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v.</u>

9

Catrett, 477 U.S. 317, 330 (1986); FED. R. CIV. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

However, the Supreme Court has instructed that, in qualified immunity cases, the existence of a videotape recording presents an "added wrinkle" to the general standard requiring the court to construe facts in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007). In that regard, "[w]here there is a video recording of the relevant events, the Court views the facts as depicted in the recording, rather than in the non-movant's favor, whenever the recording 'blatantly contradict[s]' the non-movant's version such that 'no reasonable jury could believe it.'"  Knight v. Walton, 660 F. App'x 110, 112 (3d Cir. 2016) (quoting Scott, 550

U.S. at 380-81).

The ability to rely on video evidence is important in the present case because the entire encounter between Officer Thoresen and Plaintiff is captured on video and after reviewing the videos, it is clear that Plaintiff's version of the facts that the Defendants were together engaged in corruption to exact revenge on the Plaintiff and that Defendant Thoresen was the initial aggressor is simply blatantly contradicted by the videos provided to the Court.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

**a. State Defendant's Motion to Dismiss**

State Defendant has moved to dismiss Plaintiff's claims

11

against it for lack of subject matter jurisdiction based on the
Eleventh Amendment Immunity doctrine, among other arguments.
This Court agrees that the claims against the State Defendant
are barred by the doctrine of sovereign immunity and thus, this
Opinion does not address the State Defendant's additional
arguments in support of dismissal.  Plaintiff has brought claims
pursuant to 42 U.S.C. § 1983 against the State Defendant.  These
claims are barred by the Eleventh Amendment to the U.S.
Constitution.

> The Eleventh Amendment provides:
>
> The Judicial power of the United states shall not be
> construed to extend to any suit in law or equity, commenced
> or prosecuted against one of the United States by Citizens
> of another state, or by Citizens or Subjects of any Foreign
> state.

U.S. Const. amend. XI.  "'That a state may not be sued without
its consent is a fundamental rule of jurisprudence having so
important a bearing upon the construction of the Constitution of
the United States that it has become established by repeated
decisions of this court that the entire judicial power granted
by the Constitution does not embrace authority to entertain a
suit brought by private parties against a state without consent
given.'"  Pennhurst state Sch. & Hosp. v. Halderman, 465 U.S.
89, 98 (1984) (quoting Ex parte state of New York No. 1, 256
U.S. 490, 497 (1921)).  The Supreme Court in Hans v. Louisiana,
134 U.S. 1 (1890), "extended the Eleventh Amendment's reach to

suits by in-state plaintiffs, thereby barring all private suits against non-consenting states in federal court." Lombardo v. Pa. Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008). "The state of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court." Mierzwa v. United states, 282 F. App'x 973, 976 (3d Cir. 2008) (citing Ritchie v. Cahall, 386 F. Supp. 1207, 1209-10 (D.N.J. 1974)).

Thus, constitutional claims in federal court may only be asserted against a "person" and not the state, which includes state courts, state agencies, and state actors sued in their official capacities. See Robinson v. New Jersey Drug Court, No. 17-7135, 2018 WL 3455480, at *3 (D.N.J. 2018) (citing Callahan v. City of Phila., 207 F.3d 668, 673 (3d Cir. 2000)) (noting that courts have routinely held that the state judiciary is not a "person" under § 1983); Beightler v. Office of Essex County Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009) (quoting Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 658 (3d Cir. 1989) (en banc)) (providing that the Eleventh Amendment protects state agencies when "'the state is the real party in interest'"); Will v. Michigan Dept. of state Police, 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983); Grohs v. Yatauro, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) (citing Will, 491 U.S. at 65-66) ("The state's sovereign immunity [] is

13

preserved under Section 1983; a state is therefore not a 'person' who may be sued under Section 1983.").

Accordingly, Plaintiff's § 1983 claims against the State Defendant are barred under the Eleventh Amendment, and the Court must therefore dismiss Plaintiff's claims against the State Defendant because of its sovereign immunity.  Accordingly, the Court will grant the State Defendant's Motion to Dismiss and deny Plaintiff's Motion for Summary Judgment with respect to the State Defendant for the same reasons.

**b. Summary Judgment Motions**

1. Plaintiff's claims against Defendant Thoresen

Plaintiff has brought his claims for excessive force, false arrest, and malicious prosecution pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  By its own

14

words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the

15

officer's conduct violated a constitutional right" and "the
right was clearly established" at the time of the objectionable
conduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Courts may
exercise discretion in deciding which of the two prongs of the
qualified immunity analysis should be addressed first in light
of the circumstances in the particular case at hand.  Pearson v.
Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests — the need
to hold public officials accountable when they exercise power
irresponsibly and the need to shield officials from harassment,
distraction, and liability when they perform their duties
reasonably" and it "applies regardless of whether the government
official's error is a mistake of law, a mistake of fact, or a
mistake based on mixed questions of law and fact."  Id.
(internal quotation omitted).  Properly applied, qualified
immunity "protects 'all but the plainly incompetent or those who
knowingly violate the law.'"  Ashcroft v. al-Kidd, 563 U.S. 731,
741 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, Plaintiff alleges Officer Thoresen violated his
federal constitutional rights in using excessive force and
falsely arresting and maliciously prosecuting him.  Defendant
Thoresen submits that he is entitled to qualified immunity on
each of Plaintiff's constitutional claims because Defendant
Thoresen acted as a reasonably prudent officer in determining

16

that there was probable cause Plaintiff was committing an offense at the time of the incident and because Plaintiff cannot prove Defendant Thoresen used excessive force.  In opposition, Plaintiff submits that Defendant Thoresen felt Defendant Gray "trying to get to the Plaintiff after the dime made contact with his being and that is the reasoning for Police Officer Thoresen to slam the Plaintiff to the ground and allow [Defendant Gray] the opportunity to exact revenge." (ECF No. 36 at 6.)

### a. Plaintiff's Excessive Force Claim

Plaintiff alleges that Officer Thoresen violated his federal constitutional rights in using excessive force.  A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him.  Graham v. Conner, 490 U.S. 386, 397 (1989).  While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Id.  In addition, the following factors are also relevant:

> the possibility that the persons subject to the
> police action are violent or dangerous, the
> duration of the action, whether the action takes
> place in the context of effecting an arrest, the
> possibility that the suspect may be armed, and the

17

number of persons with whom the police officers
must contend at one time.

Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).  In a claim for
excessive force, "the central question is 'whether force was
applied in a good faith effort to maintain or restore
discipline, or maliciously and sadistically to cause harm.'"
Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting
Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  Furthermore,
appropriate attention should be given "to the circumstances of
the police action, which are often 'tense, uncertain, and
rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d
628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396); see
also Graham, 490 U.S. at 396-97 (analyzing reasonableness of use
of force "from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight").

At step one, the Court does not find a genuine factual
dispute as to whether Officer Thoresen's conduct violated a
constitutional right.  Here, Plaintiff's papers do not clearly
articulate the exact conduct he claims violated his rights.
"Not every push or shove, even if it may later seem unnecessary
in the peace of a judge's chambers, violates the Fourth
Amendment." Brown v. Makofka, 644 Fed. App'x 139, 142-143 (3rd
Cir. 2016) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).
"As the Supreme Court has recognized, 'police officers are often

18

forced to make split-second judgments — in circumstances that
are tense, uncertain, and rapidly evolving — about the amount of
force that is necessary in a particular situation.'"  Id.
(quoting Graham, 490 U.S. at 396).

Here, Plaintiff caused the use of force when he made a
swinging gesture over Defendant Thoresen's shoulder at Defendant
Gray and along the way striking Defendant Thoresen's arm.
Plaintiff admits he first threw the dimes at Defendant Gray
prior to any use of physical force by Defendants.  While
Plaintiff alleges his conduct was precipitated by Defendant
Gray's verbal comments, this cannot justify an attempt to attack
against another individual which then leads to the striking of
an officer.  Such conduct does not support a claim of excessive
force when Defendant Thoresen acted, by the use of force
reasonable under the circumstances, to subdue Plaintiff.

The video produced by the parties make it clear that the
force was used quickly and necessarily to diffuse an escalating
and potentially violent situation.  Force was used for
approximately 40 seconds.  Moreover, Plaintiff was increasingly
aggressive by the time Defendant Thoresen pinned him to the
ground and Defendant Thoresen was the only Hamilton Township
officer that was directly next to both Plaintiff and Defendant
Gray during their altercation.  The Court also notes that, while
serious injury is not required to claim excessive or malicious

19

use of force, its absence further bolsters Defendants' argument.
Based on the foregoing, the Court concludes that Defendant
Thoresen utilized only the force necessary to restrain Plaintiff
and the force applied was "made in a good faith effort to
maintain or restore discipline."  Thus Defendant Thoresen's
conduct did not constitute a violation of a constitutional
right.[4]

**b. Plaintiff's False Arrest and Malicious Prosecution Claims**

The Court next turns to Plaintiff's false arrest and
malicious prosecution claims.  To state claim for false arrest
under § 1983, "a plaintiff must establish: (1) that there was an
arrest; and (2) that the arrest was made without probable
cause."  James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d
Cir. 2012).  To prevail on a malicious prosecution claim under
1983, "a plaintiff must show that: (1) the defendants initiated
a criminal proceeding; (2) the criminal proceeding ended in the
plaintiff's favor; (3) the proceeding was initiated without
probable cause; (4) the defendants acted maliciously or for a
purpose other than bringing the plaintiff to justice; and (5)

---

[4] The qualified immunity test is two-pronged: whether plaintiff
has alleged or shown a violation of a constitutional right, and
whether the right at issue was "clearly established" at the time
of the defendant's alleged misconduct.  Pearson, 555 U.S. 223,
236 (2009).  Given that Plaintiff fails to demonstrate a basis
for a constitutional violation, there is no need to address
whether the right at issue was clearly established at the time
of Defendant Thoresen's alleged misconduct.

the plaintiff suffered deprivation of liberty consistent with
the concept of seizure as a consequence of a legal proceeding."
McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir.
2009).

    The central question for the Court is whether probable
cause existed to arrest and charge Plaintiff.  Probable cause
"exists when the facts and circumstances within the arresting
officer's knowledge are sufficient in themselves to warrant a
reasonable person to believe that an offense has been or is
being committed by the person to be arrested." Orsatti v. New
Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  For false
arrest claims, courts must objectively assess whether, at the
time of the arrest and based upon the facts known to the
officer, probable cause existed "as to any offense that could be
charged under the circumstances."  Wright v. City of
Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Barna v.
City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)).
Malicious prosecution claims, however, may succeed even if
probable cause existed for one charge if there was not probable
for another.  Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007).

    Importantly, "[p]robable cause does not require that an
officer's beliefs 'were, in retrospect, accurate' but rather
looks to whether their beliefs were 'not unreasonable in light
of the information the officers possessed at the time.'"  Damico

v. Harrah's Philadelphia Casino & Racetrack, 674 Fed. App'x 198,
202 (3d Cir. 2016) (quoting Wright v. City of Philadelphia, 409
F.3d 595, 603 (3d Cir. 2005)).  The existence of probable cause
is ordinarily a factual issue for the jury.  See Halsey v.
Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014).  However, a court
may grant summary judgment if "no genuine issue of material fact
exists as to whether" there was probable cause.  Anderson v.
Perez, 677 Fed. App'x 49 (3d Cir. 2017) (citing Sherwood v.
Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

A police officer can defend a § 1983 claim by establishing:
(1) that he or she acted with probable cause; or, (2) if
probable cause did not exist, that a reasonable police officer
could have believed it existed.  Kirk v. City of Newark, 536 A.
2d 229, 234 (N.J. 1988) (citing Anderson, 483 U.S. at 663-64).
"In cases involving claims for unlawful arrest, false
imprisonment and malicious prosecution, the qualified immunity
analysis turns on whether the police officers reasonably but
mistakenly concluded that probable cause existed to arrest,
detain and initiate the criminal prosecution." Palma v. Atl.
Cty., 53 F. Supp. 2d 743, 769 (D.N.J. 1999).

Plaintiff was charged with aggravated assault and
disorderly conduct under New Jersey law.  For these claims,
Plaintiff simply explains that the Cam123_BusTerminal video
footage "can show that there was not a disorderly event."  (ECF

No. 36 at 7.)   This Court has reviewed Cam123_BusTerminal video
footage as well at the MVR and disagrees with Plaintiff.   The
New Jersey assault provision defines an aggravated assault
offense and simple assault as follows:

> a. Simple assault. A person is guilty of assault if he:
>    (1) Attempts to cause or purposely, knowingly or
>    recklessly causes bodily injury to another; or
> b. Aggravated assault. A person is guilty of aggravated
> assault if he:
>    (5) Commits a simple assault as defined in paragraph
>    (1), (2) or (3) of subsection a. of this section upon:
>       (a) Any law enforcement officer acting in the
>       performance of the officer's duties while in
>       uniform or exhibiting evidence of authority or
>       because of the officer's status as a law
>       enforcement officer;

N.J.S.A. §§ 2C:12-1(a) and (b)(5)(a).

Moreover, pursuant to N.J.S.A. § 2C:33-2(a)(1), "[a] person
is guilty of a petty disorderly persons offense, if with purpose
to cause public inconvenience, annoyance or alarm, or recklessly
creating a risk thereof he . . . [e]ngages in fighting or
threatening, or in violent or tumultuous behavior."   "Probable
cause does not require that the prosecution have sufficient
evidence to prove guilt beyond a reasonable doubt. Rather,
probable cause requires only a probability or substantial chance
of criminal activity, not an actual showing of such activity."
Peterson v. AG Pa., 551 Fed. App'x 626, 629 (3d Cir. 2014); see
also Quinn v. Cintron, 629 Fed. App'x 397, 399 (3d Cir. 2015)
(rejecting Plaintiff's argument that "the officers lacked

probable cause to arrest him because there was no evidence that
[the victim] endured any bodily injury" and finding such an
argument "confuses the probable cause inquiry with the
prosecutor's burden of proof at trial, that is, to prove every
element of the offense beyond a reasonable doubt").

First, the undisputed record evidence provides that while
Defendant Thoresen was in the middle of Plaintiff and Defendant
Gray, Plaintiff recklessly struck Officer Thoresen in the arm
while attempting to engage in a physical altercation with
Defendant Gray. The video shows Defendant Thoresen's reaction
after being struck by Plaintiff and his attempt to diffuse a
potential violent situation which led to him sustaining minor
injuries. Moreover, while on the ground Defendant Thoresen
further explains to the Plaintiff that Plaintiff struck him in
the arm.

Second, the undisputed evidence provides that Plaintiff
engaged in a physical dispute in front of an officer after he
was repeatedly ordered to relax and calm down so the three of
them could figure out how to handle the situation. Despite
these repeated instructions, Plaintiff only grew increasingly
aggressive as he raised his voice, began swearing, and
ultimately threw two dimes which as evidenced by the videos and
his own statement, Defendant Thoresen viewed as an attempt to
punch Defendant Gray.

The facts and circumstances presented in this case were sufficient "to warrant a prudent man in believing that [plaintiff] had committed or was committing" the offenses Plaintiff was charged with. Beck v. Ohio, 379 U.S. 89, 91 (1964). Furthermore, even if Defendant Thoresen lacked probable cause to arrest and charge Plaintiff, he is entitled to qualified immunity because he "reasonably but mistakenly conclude[d] that probable cause [wa]s present" for both of these offenses. Wesby, 138 S. Ct. at 591. Therefore, Defendant Officer Thoresen is entitled to summary judgment on Plaintiff's claims for false arrest and malicious prosecution. Accordingly, the Court will grant Defendant Thoresen's Motion for Summary Judgment with respect to Plaintiff's malicious prosecution and false arrest claims and deny Plaintiff's Motion for Summary Judgment with respect to such claims against Defendant Thoresen for the same reasons.

## 2. Plaintiff's Claims against Defendant Hamilton

Plaintiff attempts to hold Defendant Hamilton liable for Defendant Thoresen's conduct. In Plaintiff's Opposition papers, he cites to the Monell standard; however, he fails to explain which custom or policy Defendant Hamilton had in place that promoted violations of the U.S. Constitution. (ECF No. 36 at 2-4.) "A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat

25

superior." <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)).  Rather, "[a] plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." <u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 690-91).  For municipal liability under § 1983 to attach, a plaintiff must demonstrate that "the policy or custom itself violates the Constitution" or that "the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." <u>Id.</u> (quoting <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1027 (3d Cir. 1991)).  To impose liability against a local government under § 1983, a plaintiff must show a "relevant policy or custom, and that the policy caused the constitutional violation . . . allege[d]." <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 583-84 (3d Cir.).

Here, Plaintiff has failed to allege – even in general terms – the policy or custom at issue.  Simply stating the <u>Monell</u> standard is not enough for Plaintiff to survive summary judgment on his claims against Defendant Hamilton.  Accordingly, the Court will grant Defendant Hamilton's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment with respect to Defendant Hamilton for the same reasons.

###### c. **Plaintiff's claims against Defendants New Jersey Transit Corporation and Gray**

Plaintiff's Motion for Summary Judgment as to all Defendants raises issues as to the status of Plaintiff's claims against Defendants New Jersey Transit Corporation and Gray.  It appears from the docket that Plaintiff has not successfully served either defendant over two half years since the Complaint was filed, which is well past the Federal Rule of Civil Procedure's 90-day requirement.  See FED. R. CIV. P. 4(m).

It appears that Plaintiff never provided the United States Marshals Service ("USMS") with the required completed USMS Form 285 for Defendant Gray that would allow Plaintiff to serve his complaint on Defendant Gray despite being notified such form must be completed for each named defendant.  (ECF No. 5.)  It does not appear that Plaintiff has ever made any attempt to serve Defendant Gray.

In addition, it appears that the USMS determined that the address provided for the New Jersey Transit Corporation did not exist when he attempted to complete service on February 6, 2019.  (ECF No. 8.)  On August 21, 2019, Plaintiff requested that the summons be served to the New Jersey Transit Corporation pursuant to Federal Rule of Civil Procedure 4.  In this request, Plaintiff failed to provide the Court with a new address for the New Jersey Transit Corporation following the USMS's conclusion

27

that the initial address provided did not exist.  Beyond this,
the Court is unaware of any additional attempts by Plaintiff to
successfully serve the New Jersey Transit Corporation.

Consequently, the Court will direct Plaintiff to show cause
within 20 days as to why his claims against Defendants Gray and
the New Jersey Transit Corporation should not be dismissed for
lack of prosecution for his failure to effect service.  See
Karlsen v. GEICO, No. 20-0460, 2020 WL 7417817, at *1 (D.N.J.
2020) (explaining that Rule 4(m) provides, "[i]f a defendant is
not served within 90 days after the complaint is filed, the
court - on motion or on its own after notice to the plaintiff -
must dismiss the action without prejudice against that defendant
or order that service be made within a specified time. But if
the plaintiff shows good cause for the failure, the court must
extend the time for service for an appropriate period." FED. R.
CIV. P. 4(m).  Showing good cause "'requires a demonstration of
good faith on the part of the party seeking enlargement and some
reasonable basis for noncompliance within the time specified by
the rule.'") (citing John Vorpahl v. The Kullman Law Firm, No.
17-1693, 2018 WL 813879, at *2 (D.N.J. Feb. 8, 2018) (quoting
Veal v. United States, 84 F. App'x 253, 256 (3d Cir. 2004)).

## CONCLUSION

For the above reasons, the Court will grant State
Defendant's Motion to Dismiss, deny Plaintiff's Motion for

Summary Judgment, and grant Defendant Hamilton and Thoresen's

Motion for Summary Judgment.   Plaintiff must show cause within

20 days as to why his claims against Defendant New Jersey

Transit Corporation and Richard Gray should not be dismissed for

lack of prosecution.

An appropriate Order will be entered.


Date: January 18, 2021                     s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.